DECISION AND ORDER
PER CURIAM.
This case is an election law appeal brought by a candidate for Tribal Council against the Election Board of the Little Traverse Bay Bands of Odawa Indians (Election Board). The candidate, Kevin A. Gaseo, filed a complaint on July 7, 2011 in the Tribal Court claiming that the Election Board acted unlawfully when it certified the preliminary results of the 2011 Tribal Council General Election on June 27, 2011. After hearing oral arguments in the case on July 15, 2011, the Tribal Court rejected Mr. Gasco’s claims and affirmed the Election Board’s preliminary certification of the election results. Mr. Gaseo then appealed to the LTBB Appellate Court. The Appellate Court received briefs filed by Mr. Gaseo and the Election Board and heard oral arguments on September 9, 2011. Based on its review, the Appellate Court reverses the Tribal Court’s order and orders that the Election Board conduct a manual recount after providing the public with seven days advance notice In accordance with the instructions provided below.
BACKGROUND
This matter was reviewed by the Tribal Court based on the following facts which were stipulated to by Mr. Gaseo and the Election Board:
1.The Election Board’s first tally of the ballots in the Tribe’s 2011 General Election on June 27, 2011 revealed that only one vote separated candidates John Keshick III and Kevin A. Gaseo. This first tally was conducted by machine. The Appellate Court notes that the Tribal Court mischaracterized this first stipulated fact by stating that Mr. Gaseo stipulated to receiving one less vote than Mr. Keshick, when in fact he only stipulated to he and Mr. Keshick being separated by one vote.
2. The Election Board conducted a recount using a second machine. This first recount resulted in a tie between Mr. Gaseo and Mr. Keshick.
3. The Election Board then conducted a manual recount of the ballots. This second recount resulted in 328 votes for Mr. Keshick and 327 votes for Mr. Gaseo. Based on this second recount, the Election Board certified the preliminary election results, declaring Mr. Keshick as the winner of the fourth of four open seats on the Tribal Council.
ANALYSIS
A. Standard of Review
The Appellate Court reviews the Tribal Court Order in accordance with the standard of review required by Rule 7.501 of the Rules of Appellate Procedures. Legal conclusions are reviewed de novo and factual findings are reviewed for clear error. In this case, where the facts have been stipulated to by the parties, the Appellate Court will focus on a de novo review of the Tribal Court’s legal conclusions.
B. Arguments of the Parties
The central thrust of Mr. Gasco’s appeal is that the Election Board was required by law to conduct a special runoff *274 election after its first recount resulted in a tie between himself and Mr. Keshick. Mr. Gaseo argues that the Election Board acted unlawfully when it chose to conduct a second manual recount following the tie, which resulted in a declaration that he had received one less vote than Mr. Keshick. Mr. Gasco’s brief states,
Because of the close margin between candidates Keshick and Gaseo [following the first tally of the ballots], there was an automatic recount by a second machine. At the completion of that mandatory recount the vote was tied. According to the Statute [Section X(C)(l)(a) of Waganakising Odawak Statute 2010-019, Tribal Elections and Election Board], this should result in a declared tie and a run off election held. There is no reference in the Statute to conducting a hand or manual recount to break a tie.
Brief of Appellant, August 19, 2011, p. 9. The Election Board argues that it acted lawfully by choosing to conduct a manual recount following the first recount resulting in a tied vote. The Election Board argues that after the first recount produced a tie, the statutory procedure for ties found at Section X(C)(l)(a) of the Elections Statute “are not the governing rules. These rules govern the case of a tie that occurs after a recount triggered by an initial tie.” The Election Board’s position is that no specific rules exist within the Elections Statute or the Election Board Procedures Manual that govern the scenario where a tie results after a first recount following a tally that ends with a margin of difference of less than one percent. Under these circumstances, the Election Board argues, and the Tribal Court held, that it is appropriate to defer to the Election Board’s decision to conduct an immediate manual recount and certify the results of the manual recount as the preliminary outcome of the election. In support of its claim that it is entitled to deference in its decision to conduct a manual recount, the Election Board relies upon the language of the LTBB Constitution, which states that the Election Board “shall conduct all general and special elections,” and shall “adopt rules and regulations governing elections.” LTBB Constitution, Article XI, § A.
C. Applicable Law
The governing law for tribal elections includes Articles VII (Tribal Council), XI (Election Board), and XII (Elections) of the LTBB Constitution; the Tribal Elections and Election Board Statute (Elections Statute); and the Election Board Procedures Manual (Procedures Manual). Article XI, Section A of the LTBB Constitution is relevant for this case. It provides that
The Election Board is hereby created by this Constitution as an independent entity. The Election Board shall conduct all general and special elections. The Election Board shall adopt rules and regulations governing elections, including the number of signatures required for candidacy petitions. These rules may be amended as needed. The Election Board shall have the authority to employ their own staff to fulfill their duties under this Constitution.
LTBB Constitution, Article XI, § A.
The Tribal Council also has the power under the Article VTI, § D(l) of the LTBB Constitution to “make laws not inconsistent with this Constitution.” This power includes the authority to enact laws that govern Elections. The Tribal Court’s opinion impliedly rejects the notion that the Tribal Council has the authority to enact a Tribal Elections and Election Board Statute, as evidenced by its failure to include the statute within its summary of the applicable law in this case. This presumption is incorrect, however, because *275 the Constitution does not delegate exclusive legislative authority with respect to elections to the Election Board. Instead, the Constitution merely states that the Election Board shall “conduct” elections. The verb “conduct” is not defined in the Constitution. The Merriam-Webster Dictionary defines the verb “conduct” as “to bring by or as if by leading: guide;” and “to lead from a position of command; to direct or take part in the operation or management of; to direct the performance of.” Used in the LTBB Constitution, the statement that the Election Board has the power to conduct elections means that they have the authority to direct elections and to take part in the operation and management of elections. This power includes matters such as collecting nomination petitions, mailing ballots, collecting and counting ballots, and certifying elections results. This authority is distinct from the power to enact laws that govern elections.
The LTBB Constitution also provides that the Election Board has the authority to enact rules and regulations governing elections. There is no reference in the LTBB Constitution to this being an exclusive grant of legislative authority. The Appellate Court finds that the Tribal Council possesses constitutional authority to enact laws that govern elections that are not inconsistent with the Constitution’s specific election requirements. The Election Board’s “rules and regulations” power is best understood as the authority to promulgate rules that fill in the gaps of relevant election law statutes and constitutional provisions.
Within the Elections Statute, the relevant sections for our analysis include Parts C and D of Section X of the statute, titled “Ties” and “Recounts” respectively.
Finally, the applicable law in this case also includes the Election Board Procedures Manual, to the extent that it is consistent with the Tribal Elections and Election Board statute and the relevant portions of the LTBB Constitution. The relevant portions of the Procedures Manual include Sections B and C of the Election Day Procedures, titled “Ties” and “Recounts.”
D. Analysis
The Appellate Court begins by noting that the parties agree on the law that applied to the initial tally of ballots. Following the first tally, when Mr. Gaseo and Mr, Keshick were separated by only one vote, the Elections Statute provision titled “Recounts” in Section X(D)(1) applied. That section provides that “[a]ny contest that ends with a margin of less than one percent shall be subject to an automatic recount. A second machine shall be used for the recount.” The Procedures Manual includes the same provision, and its language on this point is identical in all material respects. In accordance with this provision, the Election Board conducted an automatic recount using a second machine. This first recount produced a tie.
The question that the Appellate Court must address is whether the Election Board lawfully conducted a manual recount following the tie, and whether they lawfully declared Mr, Keshick the winner of the fourth Tribal Council seat over Mr. Gaseo as a result of that manual recount. Mr. Gaseo claims that the manual recount was in error, and that the Election Board was required to conduct a special run-off election at that time.
The Appellate Court is not persuaded by either the Election Board or Mr. Gasco’s analysis. There are two reasons why we decline to adopt Mr, Gasco’s reasoning. First, Mr. Gaseo argues that the statutory provision for a special run-off election applies whenever a recount results in a tie. *276 Mr. Gaseo argues that this result is dictated by the statute because of a sentence in Section X(C)(l)(a) that reads as follows: “Should a tie exist at the completion of the recount, the Election Board will conduct a special run-off election limited to the tied candidates ...” We disagree. The use of the words “the recount” does not refer to any recount under any circumstances. Rather the words “the recount” refers back to the recount addressed in the immediately preceding sentence in Section X(C)(l)(a). The immediately preceding sentence describes a recount in a very specific set of circumstances. It states that “[i]n the event that at the completion of the canvas of the General Election results the tally reveals that any candidate has received the same number of votes as received by another candidate in that contest, the Election Board will conduct a recount of the ballots cast in that contest.” Thus, the words “the recount” that Mr. Gaseo centers upon refer to a recount producing a tie that immediately follows an earlier tally revealing a tie. In this case, these circumstances were not present. The first tally of the ballots revealed a margin of less than one percent between Mr. Gaseo and Mr. Keshick, not a tie. Therefore, it follows that the special runoff election procedure referred to by Mr. Gaseo does not apply in this case.
Secondly, under Mr. Gasco’s theory, the provisions of the Elections Statute would be applied sequentially, one after the other, depending on the outcome produced by the application of any one provision. For example, if an initial tally results in a less than one percent differential in votes for two candidates, and a recount performed in accordance with the statute produces a tie, then the Election Board should slide from the procedure for “recounts” in Section X(D)(1) to the statutory procedure for “ties” in Section X(C)(l)(a). This approach to determining the outcome is flawed, because it could result in a potentially infinite cycle of applying one provision of the Elections Statute after another without allowing for finality in the result. For this reason, the Appellate Court is not persuaded that the provisions of the Elections Statute are intended to be applied in this manner. Rather, to promote finality, election results should be determined by application of either the recounts section or the tie section, but not a dance back and forth between both of them.
The Appellate Court is also not persuaded that the Election Board’s manual recount and resulting preliminary certification of the election results is lawful under these circumstances. The Election Board conceded at oral argument that the Elections Statute and its Procedures Manual do not address how to determine an election when a tie results following a recount of votes that initially produced a less than one percent differential between candidates. The Election Board, believing that it was operating without a clear mandate under the governing law, chose to improvise and conduct a manual recount of the ballots. This manual recount was not and could not have been anticipated by the candidates and the tribal membership, leading its performance to be tainted by a lack of predictability and transparency.
The Appellate Court also considers whether the Election Board’s conduct should be afforded deference, in spite of the problems we identify with the use of the manual recount. In an earlier decision, we recognized that some degree of judicial deference to agency decisions may be appropriate where an agency acts within its legally-authorized, delegated authority. LTBB Gaming Regulatory Commission v. Milligan, LTBB Appellate Case A-006-0707, — Am. Tribal Law-, 2008 WL 6969254 (October 1, 2008). In Milligan, we declined to give judicial deference *277 to the Gaming Regulatory Commission’s (GRC’s) decision to suspend the casino General Manager because the GRC acted outside the scope of its delegated authority. There, the Gaming Ordinance had limited the GRC’s authority to the promulgation of regulations and the processing of license applications in accordance with those regulations. Because the GRC had suspended the General Manager by issuing a spontaneous management directive that fell outside the scope of both regulation promulgation and license application processing, we held that it acted outside the scope of its authority.
Here, the LTBB Constitution provides that the Election Board has the authority to conduct elections and develop rules and regulations for elections. In this case, however, the Election Board’s use of the manual recount did not constitute an exercise of either of these delegated powers. The Election Board can adopt rules and regulations using a deliberative process that conforms to the statutory requirements for taking official actions during meetings. See Tribal Elections and Election Board Statute, Section VI, Meetings, Minutes and Phone Polls, Waganakising Odawak Statute 2010-019. In the case of emergencies, the Election Board has a special procedure for taking action detailed in Section VI(C) of the Elections Statute. The Election Board’s Procedures Manual also provides detailed requirements for the process of adopting new rules. See, Meeting Policy and Phone Poll Policy, Election Board Procedures Manual. In this case, the Election Board did not act consistent with its statutory requirements or its Procedures Manual. Just as in the case of Milligan, where the Election Board acts in a spontaneous, ad hoc fashion that does not comport with the scope of its authority, the Appellate Court declines to defer to its judgment.
Given the failure of the governing law to dictate the outcome in this case, the Appellate Court concludes that the most appropriate action is for the Election Board to conduct a new manual recount of the ballots after providing seven days of public notice. The new manual recount must be conducted in a manner that allows the same degree of public observation that is permitted under the Elections Statute and Procedures Manual. If the manual recount results in a tie, then the Election Board must conduct a special run-off election in accordance with the runoff election procedures in the Elections Statute and Procedures Manual. If the manual recount does not result in a tie, then the Election Board must certify the outcome, even if the votes indicate a margin of less than one percent.
CONCLUSION
In conclusion, the Appellate Court reverses the opinion of the Tribal Court and orders that the Election Board conduct a manual recount of the ballots in accordance with the instructions given in this opinion.
DECIDED AND APPROVED BY A UNANIMOUS APPELLATE COURT.